**FILED**
**CLERK**

3/2/2015 12:24 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
VILLAGE OF WEST HAMPTON DUNES,

               Plaintiff,

         -against-

THE STATE OF NEW YORK, HON.
ANDREW M. CUOMO, as Governor of the
State of New York, THE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION OF
THE STATE OF NEW YORK, JOSEPH J.
MARTENS, as Commissioner of the Department
of Environmental Conservation of the State of
New York, ALAN A. FUCHS, P.E., as Director
of the Bureau of Flood Protection and Dam
Safety of the Department of Environmental
Conservation of the State of New York,

              Defendants.

---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
14-cv–3299 (ADS) (AKT)

<u>**APPEARANCES:**</u>

**Joseph W. Prokop PLLC**
*Attorney for the Plaintiff*
267 Carleton Avenue, Suite 301
Central Islip, NY 11722

**Sinnreich Kosakoff & Messina, LLP**
*Attorneys for the Plaintiff*
267 Carleton Avenue, Suite 301
Central Islip, NY 11722
     By: Jonathan Halsby Sinnreich, Esq.
       Lisa Angela Perillo, Esq., Of Counsel

**Environmental Protection Bureau of the Office of the New York State Attorney General**
*Attorneys for the Defendants*
120 Broadway, 26th Floor
New York, NY 10271
     By: Laura Elizabeth Heslin, Assistant Attorney General
       Norman Spiegel, Assistant Attorney General
       Monica Blong Wagner, Deputy Bureau Chief

1

**SPATT, District Judge**.

This case arises from the decision of the New York State Department of Environmental Conservation (the "NYDEC") not to renew a general permit issued to the Village of West Hampton Dunes (the "Village" or the "Plaintiff") for the building, rebuilding, and repair of structures on a barrier island located in the Village.

Pursuant to a stipulation of settlement and consent judgment in a class action (the "Consent Judgment"), <u>Rapf v. Suffolk County</u>, 84-cv-1478 (the "Rapf Action"), approved by United States District Court Judge Eugene Nickerson on December 5, 1994, the NYDEC was required, among other things, to issue a general permit to the Village "allowing for the building, rebuilding or repair of structures" on the barrier island.

On August 8, 1999, the NYDEC issued a general permit to the Village (the "1999 General Permit") for a ten-year term for building and development in the Village.

Three weeks prior to the expiration of the 1999 General Permit, on July 16, 2009, the Plaintiff requested that the NYDEC renew the 1999 General Permit under the same conditions for a successive ten-year term. On February 5, 2010, the NYDEC refused to do so and instead proposed a permit with a five-year term and allegedly more restrictive conditions on building in the Village than the conditions in the 1999 Permit. The Plaintiff appealed the NYDEC's Decision before an Administrative Law Judge and later the Commissioner of the NYDEC seeking an order requiring the NYDEC to renew the 1999 Permit for a ten-year term under the same conditions. Both appeals were denied.

On May 28, 2014, the Village commenced the present action against the NYDEC, Martens, in his official capacity, and Alan A. Fuchs ("Fuchs"), the NYDEC's Director of the Bureau of Flood Protection and Dam Safety (collectively, the "NYDEC Defendants") seeking

injunctive relief and asserting claims for (i) violation of the Consent Judgment; (ii) breach of contract; and (iii) a judgment pursuant to Article 78 of the New York State Civil Practice Laws and Rules ("NYCPLR") stating that the decision by the NYDEC not to renew the Plaintiff's 1999 General Permit was arbitrary and capricious.

In addition, the complaint names New York State and Andrew Cuomo, as Governor of New York State (collectively, the "New York State Defendants"), as indispensable parties but does not make any claims against them.

The Village had initially asserted claims against the United States, Suffolk County, and Carl Hansen ("Hansen"), one of the named plaintiffs in the Rapf Action. However, the Village voluntary dismissed its claims against these parties by stipulations so ordered by this Court on October 17, 2014, November 3, 2014, and January 14, 2015, respectively.

Presently before the Court is a motion to dismiss the complaint in its entirety by the New York State Defendants and the NYDEC Defendants (collectively, the "Defendants") pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Court grants the Defendants' motion.

## I. BACKGROUND

### A. Underlying Facts

Unless otherwise noted, the Court draws the following facts from the Plaintiff's complaint and construes them in the light most favorable to the Plaintiff.

#### 1. The Parties

The Plaintiff is a New York State Village duly formed as a municipal corporation under New York State law. (Compl. at ¶ 1.) It is located in Suffolk County and occupies a barrier

island along the south shore of Long Island within the Town of Southhampton (the "Barrier Island"). (Compl., Ex. A at p. 2–3.) The Barrier Island is located between Moriches Bay to the north and the Atlantic Ocean to the south, and is separated from Fire Island to the west by the Moriches Inlet. (Id.)

The Defendant New York State is a sovereign state of the United States of America with executive offices located in Albany, New York. (Id. at ¶ 4.) As stated above, the Plaintiff names New York State as a defendant but does not assert any claims against it.

The Defendant the Honorable Andrew Cuomo (the "Governor") is a duly elected Governor of New York State. (Id. at ¶ 5.) The Plaintiff names the Governor as a defendant in his official capacity but does not assert any claims against him.

The Defendant NYDEC is a New York State agency that also maintains an office in Albany, New York. (Id. at ¶ 8.)

The Defendant Martens is the Commissioner of the NYDEC. (Id. at ¶ 9.) The Plaintiff asserts claims against Martens solely in his official capacity. (September 9, 2014 Stipulation and Order, Dkt. No. 38.)

The Defendant Fuchs is the Director of the Bureau of Flood Protection and Dam Safety, which is a division of the NYDEC. (Compl. at ¶ 10.) The Plaintiff also asserts claims against Fuchs solely in his official capacity. (September 9, 2014 Stipulation and Order, Dkt. No. 38.)

### 2. The Rapf Litigation

In the 1960s, the U.S. Army Corps of Engineers, Suffolk County, and the NYDEC undertook a project to construct "groins" on the beaches located on the Barrier Island to prevent shore erosion. (Compl. at ¶ 14.) "Groins are 'strong, low sea walls built at a right angle to the coast[line]' in order to reduce shore erosion." Ireland v. Suffolk Cnty. of New York, 242 F.

Supp. 2d 178, 181 (E.D.N.Y. 2003). However, the project was allegedly never completed and some of the groins that were constructed ended up exacerbating the dilatory effects of storms on the Barrier Island's beach and dune systems. (Id. at ¶¶ 14–15.) Allegedly as a result of the improper construction of the groins, the Barrier Island was breached by ocean water, which caused property damage and the destruction of several hundred homes on the Barrier Island. (Id. at ¶ 15.)

On April 11, 1984, Maurice Rapf ("Rapf") and Hansen, two Suffolk County residents who owned beach front property on the Barrier Island, commenced a class action before Judge Nickerson on behalf of themselves, other individuals who owned property on the Barrier Island, and future owners of property on the Barrier Island. (Compl., Ex. A, at pp. 2–3.) The proposed class sought damages resulting from shore erosion and an order requiring Suffolk County to fix the problem caused by the faulty groins. (Compl. at ¶ 17.)

On May 20, 1985, Suffolk County filed a third-party complaint against the United States; the State of New York; Mario Cuomo, the then-Governor of the State of New York; NYDEC; and James F. Kelly, the then-Chief of the Flood Protection Bureau of the NYDEC. (See Compl. Ex. A, at pp. 3–4.)

On October 31, 1994, after extensive settlement negotiations, the parties in the Rapf Action entered into a Consent Judgment settling the case. (Id.) Pursuant to the Consent Judgment, the Plaintiff was permitted to intervene in the action. (Compl. at ¶ 19.)

Although they did not admit to the allegations in the class action complaint, Suffolk County, New York State, the NYDEC, and the United States (collectively, the "Rapf Defendants") were required under the Consent Judgment to share in the costs of the restoration and maintenance of the dunes and beaches on the Barrier Island for a period of thirty years.

5

(Compl., Ex. A, at §§ 1, 13.)  In addition, they were required to share the costs associated with establishing seven wooden walkovers allowing for public access to a new public beach on the Barrier Island.  (Compl., Ex. A, at §§ 1, 13.)  Suffolk County was further required to pay the settlement class members $ 2 million in damages and attorneys' fees of up to $ 2 million.  (Id. at §§ 3(a), (b).)

In exchange, the settlement class members agreed to release any claims against the Rapf Defendants "arising out of or related to the conduct, transactions or occurrences . . . related to the design, construction, or maintenance of the Groin Field [on the Barrier Island]."  (Id. at § 10.) In addition, the class members who owned property on the ocean side of the Barrier Island agreed to restrictions in the development of their lots and public easements to provide for the creation of a public beach on Barrier Island.  (Id. at §§ 4, 5.)

Significantly, under Section 12(b)(i) of the Consent Judgment, the class members' obligations were conditioned upon:

> [The] delivery by [NYDEC] to the Village of a general permit, with appropriate conditions standard to such permits, allowing the building, rebuilding, or repair of structures in the [d]amage [a]rea [of the Barrier Island] substantially within the same footprint as, and with no greater ground area coverage than, existed prior to the damage or loss; and, in the case of a lot on which there never had been a structure, allowing the building of a structure in compliance with the Tidal Wetlands Act and other applicable law and regulations[.]

(Id. at § 12(b)(i).)  Although the Plaintiff concedes that Section 12(b)(i) does not explicitly specify the duration of the general permit, it asserts that the NYDEC was "aware" that it was required to issue **to** the Plaintiff a general permit for a thirty-year period covering the duration of the Rapf Defendants' other obligations under the Consent Judgment.  (Compl. at ¶ 28.)

With respect to enforcement, the Consent Judgment provides that: (i) if "any party does not comply with this Stipulation, any other party shall have the right to seek all appropriate

remedies from the Court"; (ii) "[t]he Court will retain jurisdiction over the Parties to enforce this Stipulation of Settlement"; and (iii) "[t]his Stipulation shall be governed by and interpreted in accordance with the laws of the State of New York and the United States." (Compl., Ex. A, at §§ 18, 20.)

On December 5, 1994, Judge Nickerson issued a final judgment and order (the "1994 Final Order") certifying the proposed settlement class, approving the terms of the settlement in accordance with the Fed. R. of Civ. P. 23, and dismissing the class action. (Prokop Decl., Ex. C, at ¶¶ 4, 9.) In so doing, the 1994 Final Order provides that "[f]or purposes of this Final Judgment, the Court adopts and incorporates herein the provisions of the Stipulation of Settlement and Consent Judgment, dated October 31, 1994, including its definition and terms." (Id. at ¶ 1.) Notably, Paragraph 7 of the 1994 Final Order also provides, "[T]his Court hereby retains continuing jurisdiction: (a) over implementation of this Settlement; (b) over the Action until the Settlement becomes final and effective; and (c) over all parties to the Action for the purpose of enforcing and administering the Settlement." (Id. at ¶ 7.)

### 3. The 1999 General Permit

On August 8, 1999, the NYDEC issued a general permit to the Plaintiff (the "1999 General Permit") for the building, rebuilding, and repair of structures on the Barrier Island. (Compl. at ¶ 29.) The complaint does not specify why it took the NYDEC almost five years from the date that the Consent Judgment became final on December 5, 1994 to issue a general permit to the Plaintiff.

The Plaintiff does not attach a copy of the 1999 General Permit to its complaint or specify the terms of the 1999 General Permit with the exception of its expiration date. The 1999 General Permit had a term of ten-years and expired on August 31, 2009. (Compl. at ¶ 30.)

The Plaintiff concedes that the 1999 General Permit had an explicit term of ten-years. However, the Plaintiff asserts that it initially sought a general permit with a thirty-year term because the NYDEC Defendants who signed the Consent Judgment had obligations to maintain the Barrier Island for a period of thirty years, and the Plaintiff wanted to the general permit to be in place during that period. (See Compl. at ¶ 24.) In response, the NYDEC "represented to the Village that under the [NYDEC's] regulations the longest term for which a general permit could be issued was ten years." (Id. at ¶ 31.) To deal with this problem, the Plaintiff alleges that the parties orally agreed during the negotiations that the NYDEC would issue to the Plaintiff a permit every ten years for a period of thirty years. (Id.) Thus, although the 1999 General Permit had an explicit term of ten-years, the Plaintiff alleges that the parties understood that the NYDEC would renew the Plaintiff's general permit under identical terms every ten years for a thirty-year term. (Id.) There is no writing confirming this alleged oral agreement.

### 4. The 2010 General Permit

Three weeks prior to the expiration of the 1999 General Permit, on July 16, 2009, Aram Terchunian ("Terchunian"), the Commissioner of Wildlife Protection for the Village, sent a letter to the NYDEC requesting it to re-issue the 1999 General Permit for another ten-year term. (Compl. at ¶ 37.) In a September 17, 2009 letter responding to Terchunian's letter, Vernon Rail ("Rail"), the counsel for the NYDEC, allegedly requested extensive documentary material and copies of "various applications for permits and approvals" from the Village in connection with their request to renew the 1999 General Permit. (Id. at ¶ 40.)

In a December 23, 2009 letter to the Village, John A. Wieland, a representative of the NYDEC, stated that the NYDEC had determined that: (i) the 1999 General Permit had expired and was no longer in effect; (ii) the NYDEC was not required to renew the 1999 General Permit

under the Consent Judgment; and (iii) the NYDEC was going to treat the Village's request for a renewal of the 1999 General Permit as an application for a new general permit, and, thus, the Village had to comply with the NYDEC's requests for additional documentation.  (Id. at ¶ 42.)

On February 5, 2010, the NYDEC issued a new general permit to the Village (the "2010 General Permit").  (Id. at ¶ 44.)  However, the new 2010 General Permit had different conditions than the conditions provided for in the 1999 General Permit.  In particular, the 2010 General Permit provided for a five-year term, not a ten-year term.  (Id. at ¶ 45(A).)  In addition, the 2010 General Permit allegedly placed more onerous conditions on building in the Barrier Island than the conditions imposed by the 1999 General Permit.  For example, the 2010 Permit limited the ability of property owners to make more than one repair or adjustment to their properties.  (Id. at ¶ 45(D)).  Similarly, the 2010 General Permit designated the entire Village as a piping plover habitat and as a result, subjected property owners to "unduly restrictive" restrictions on building and development in the area. (Id. at ¶ 45(I)).  The 1999 General Permit did not impose such conditions.  (Id. at ¶ 45.)

### 5. The Plaintiff's Administrative Challenge to the 2010 General Permit

On an unspecified date, the Plaintiff made a timely demand for an adjudicative hearing before an administrative law judge ("ALJ") to challenge the 2010 General Permit and to request an order requiring the NYDEC to renew the 1999 General Permit under identical terms for a ten-year term. (Id. at ¶ 46.)  On January 5, 2011, the parties held a conference before ALJ Helene Goldberger.  (Id. at ¶ 48.)

On January 7, 2011, ALJ Goldberger ruled that: (i) "the 1999 General Permit was expired"; (ii) "the 2010 General Permit was not yet in effect"; (iii) "the five-year term in the proposed 2010 General Permit was reasonable and did not require adjudication"; and (iv) "none

9

of the other Special Conditions of the 2010 General Permit contained adjudicable issues." (Id. at ¶ 52.)

The Plaintiff appealed the decision of ALJ Goldberger to Joseph Martens ("Martens"), the Commissioner of the NYDEC. (Id. at ¶ 53.) On April 28, 2014, Martens issued a decision affirming the decision by ALJ Goldberger and withdrawing the 2010 General Permit because of the Plaintiff's refusal to comply with the NYDEC's request for additional documents. (Id. at ¶ 56.) Therefore, the Plaintiff was left without a general permit in place. (See id.) However, Martens noted that individual property owners could still apply for individual permits. (Id.)

**B. Procedural Background**

**1. The Rapf Action**

On February 13, 1995, Judge Nickerson signed an amended final judgment and order of dismissal and administratively closed the Rapf Action. (84-cv-1478, Dkt. No. 189.) On March 7, 2002, the Rapf Action was reassigned to District Court Judge John Gleeson.

On March 1, 2002, the Plaintiff filed a motion for contempt in the Rapf Action against the NYDEC alleging that it was not complying with its obligations under the Consent Judgment. (84-cv-1478, Dkt. No. 205.) The Plaintiff does not make clear the basis of that motion, though it appears not to be related to the permit provision of the Consent Judgment at issue in this case. On May 21, 2002, Judge Gleeson denied the Plaintiff's motion for contempt. (84-cv-1478, Dkt. No. 205.)

On June 14, 2010, Kathryn A. Larsen wrote a letter to Judge Gleeson as a friend of the Court alleging that some of the individual property owners were violating terms of the Consent Judgment unrelated to the present action. (84-cv-1478, Dkt. No. 228.) Since then, there has been no other activity in the Rapf Action, though Judge Gleeson remains assigned to the case.

## 2. The Present Action

On May 28, 2014, the Plaintiff commenced the present action under a new docket number, 14-cv-3299, which was assigned to this Court. Despite the fact that the Plaintiff makes clear in the complaint that this action arises from the Consent Judgment in the Rapf Action, the Plaintiff decided not to file the present complaint in the Rapf Action.

In the action before this Court, the Plaintiff has brought three causes of action against the NYDEC Defendants. First, the Plaintiff asserts that the NYDEC Defendants violated the Consent Judgment by failing to re-new the 1999 General Permit for another ten year term and seeks a mandatory injunction "compelling the [NYDEC] to renew the [g]eneral [p]ermit on the same terms as" originally set forth in the 1999 General Permit for a period of thirty years. (Id. at ¶¶ 57–61.) Second, the Plaintiff asserts a common law breach of contract claim against the NYDEC Defendants based on the same allegations as are set forth in the first cause of action for violating the terms of the Consent Judgment. (Id. at ¶¶ 62–65.) Third, the Plaintiff seeks a judgment pursuant to Article 78 of the NYCPLR alleging that the decision by Martens affirming ALJ Goldberger's ruling and denying the Plaintiff's application to renew the 1999 General Permit was arbitrary, capricious, and unlawful. (Id. at ¶ 67, 74.) In the alternative, the Plaintiff asserts that ALJ Goldberger erred in failing to give the affected property owners notice of the January 5, 2011 hearing and requests that the Court remand the Plaintiff's claims and order another administrative hearing. (Id. at 74.)

In addition, the complaint names the New York State Defendants as indispensable parties pursuant to Fed. R. Civ. P. 19 but does not make any claims against them. (Pl.'s Opp'n Mem. of Law at 23–24.)

## II. DISCUSSION

### A. Legal Standards

#### 1. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Further, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citations omitted).

In addition, where, as here, the case is at the pleading stage and no evidentiary hearings have been held, the court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in favor of the Plaintiff. Buday v. New York Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) ("Where, as here, the case is at the pleading stage and no evidentiary hearings have been held, however, in reviewing the grant of a motion to dismiss under Rule 12(b)(1) we must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.") (citing Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009)). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Id. (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).

Finally, a district court may consider evidence outside of the pleadings in deciding a Rule 12(b)(1) motion. Id. (citing Morrison v. Nat'l Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008); see also Sadikoglu v. United Nations Dev. Programme, No. 11 CIV. 0294 (PKC), 2011 WL 4953994, at *2 (S.D.N.Y. Oct. 14, 2011) ("'[W]here jurisdictional facts are placed in

dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'") (quoting Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005)).

**2. Rule 12(b)(6)**

In deciding a Rule 12(b)(6) motion to dismiss, the court must "accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Gorman v. Consol. Edison Corp., 488 F.3d 586, 591-92 (2d Cir. 2007) (citing Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002)).

In addition, a plaintiff opposing a Rule 12(b)(6) motion must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). In particular, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Id.; see also Luna, 11 F. Supp.3d at 400–401 ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (citing Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006)).

When considering a Rule 12(b)(6) motion, a court can generally "only consider the complaint, any written instrument attached to the complaint as exhibits, or any documents incorporated in the complaint by reference." Garnett-Bishop v. New York Cmty. Bancorp, Inc., No. 12-CV-2285 (ADS), 2014 WL 5822628, at *13 (E.D.N.Y. Nov. 6, 2014) (Spatt, J) (citing Rothman v. Gregor, 220 F.3d 81, 88–89 (2d Cir. 2000)); see also Ahluwalia v. St. George's Univ., LLC, No. 14-CV-3312 ADS), 2014 WL 6674615, at *8 (E.D.N.Y. Nov. 25, 2014) (Spatt,

J) ("Furthermore, in deciding a motion to dismiss, the Court is confined to 'the allegations contained within the four corners of [the] complaint.' . . . . This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken.") (citing <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 71 (2d Cir. 1998)).

Here, in addition to the complaint, the Plaintiff also attaches to its memorandum of law in opposition to the Defendants' present motion a copy of the Consent Judgment and a copy of the 1994 Final Order.  (<u>See</u> Prokop Decl. Exs. A–C.)  The copy of the Consent Judgment is proper for this Court to consider because the Plaintiff attached it as an exhibit to the complaint. (Compl., Ex. A.)  Moreover, although the Plaintiff did not attach of the 1994 Final Order to the complaint, the Court will consider it as a matter of judicial notice.  <u>See</u> <u>Byrd v. City of New York</u>, No. 04-CV-1396, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005) ("The Stipulation of Settlement was filed in connection with Byrd's prior lawsuits and was so ordered by the court. That document is thus subject to judicial notice, and we have often held that material that is a matter of public record may be considered in a motion to dismiss.").

**B. As to the Plaintiff's First Cause of Action**

In its first cause of action, the Plaintiff asserts that the NYDEC Defendants violated the 1994 Consent Judgment by failing to renew the 1999 General Permit.  (Compl. at ¶¶ 57–61.) The Plaintiff asserts that the Court has jurisdiction over this claim based on (i) the Court's ancillary jurisdiction and (ii) federal question jurisdiction.

In response, the Defendants argue that: (i) the Court does not have ancillary jurisdiction because this Court did not issue the Consent Judgment; (ii) there is no federal question

14

jurisdiction as the interpretation of the Consent Judgment will be governed by state law; and (iii) the NYDEC Defendants have not waived their sovereign immunity under the Eleventh Amendment to a suit in a separate action to enforce the settlement agreement. The Court agrees with the first two arguments and therefore does not reach the the Defendants' third contention with respect to sovereign immunity.

### 1. Ancillary Jurisdiction

The Plaintiff asserts that the Court has ancillary jurisdiction to enforce the Consent Judgment. "[A] federal court may exercise ancillary jurisdiction "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Epperson v. Entm't Express, Inc., 242 F.3d 100, 104-05 (2d Cir. 2001) (quoting Peacock v. Thomas, 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996)).

The first category of claims that the doctrine of ancillary jurisdiction applies to are pendent state law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Winter v. Novartis Pharm. Corp., No. 14-CV-2885 PKC, 2014 WL 4092238, at *2 (E.D.N.Y. Aug. 20, 2014) ("The first category generally applies to cases in which a plaintiff brings related state law claims in addition to claims over which the court has original jurisdiction.") (quoting 28 U.S.C. § 1367); see also City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165, 118 S. Ct. 523, 530, 139 L. Ed. 2d 525 (1997) ("[T]he supplemental jurisdiction statute, which combines the doctrines of pendent and ancillary jurisdiction under a common heading.").

Accordingly, this category applies only to claims within the same action that are part of the same case or controversy or "derive from a common nucleus of operative fact." Id. Since this action is separate from the Rapf Action, the Plaintiff's claims do not fall under the first category of ancillary jurisdiction.

The second category of claims that a federal court can exercise ancillary jurisdiction over are those claims and actions which are necessary to effectuate its own judgments. Epperson, 242 F.3d 100 at 105 ("We have reserved the use of ancillary jurisdiction in subsequent proceedings for the exercise of a federal court's inherent power to enforce its judgments.") (quoting Peacock, 516 U.S. at 356, 133 L. Ed. 2d 817); Nat'l City Mortgage Co. v. Stephen, 647 F.3d 78, 85 (3d Cir. 2011), as amended (Sept. 29, 2011) ("Ancillary enforcement jurisdiction is . . . a creature of necessity, . . . giving federal courts the power to enforce their judgments and ensuring that they are not dependent on state courts to enforce their decrees.") (internal citations and quotation marks omitted). The underlying premise of this second category of ancillary jurisdiction is that "a district court acquires jurisdiction of a case or controversy in its entirety, and, as an incident to the full disposition of the matter, may hear collateral proceedings when necessary to allow it to vindicate its role as a tribunal." See § 3523.2 "Ancillary" Jurisdiction over Related Proceedings, 13 Fed. Prac. & Proc. Juris. § 3523.2 (3d ed.); see also K.C. ex rel. Erica C. v. Torlakson, 762 F.3d 963, 967 (9th Cir. 2014) ("[T]his less common exercise of non-statutory ancillary jurisdiction 'rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety. Incident to the disposition of the principal issues before it, a court may decide collateral matters necessary to render complete justice.'") (quoting Jenkins v. Weinshienk, 670 F.2d 915, 918 (10th Cir. 1982)).

However, "[e]nforcement ancillary jurisdiction remains a narrow exception to a federal district court's limited subject matter jurisdiction." Winter, 2014 WL 4092238, at *2; see also Peacock, 516 U.S. at 358 ("In determining the reach of the federal courts' ancillary jurisdiction, we have cautioned against the exercise of jurisdiction over proceedings that are 'entirely new and original[.]'") (quoting Krippendorf v. Hyde, 110 U.S. 276, 285, 4 S.Ct. 27, 31, 28 L.Ed. 145 (1884)).  For example, the Supreme Court has approved the exercise of ancillary jurisdiction over "supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments — including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances."  Peacock, 516 U.S. at 356, 116 S. Ct. at 868.  None of these claims are involved in this case.

In addition, in Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994), the Supreme Court noted in *dicta* that a district may have ancillary jurisdiction to enforce a settlement agreement "if the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal — either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order."  However, in that case, a district court judge so ordered **a** stipulation of a settlement agreement, and the plaintiff later brought claims before the same district court judge to enforce certain terms of the settlement agreement.  Id. at 376–77, 114 S. Ct. at 1677.  The Supreme Court reversed the Ninth Circuit decision and found that the district court did not have ancillary jurisdiction to entertain the claim because the settlement contract did not reserve jurisdiction for the federal district court.  Id. at 382, 114 S. Ct. at 1677.

Here, the Consent Judgment provided that if "any party does not comply with this Stipulation, any other party shall have the right to seek all appropriate remedies from the Court" and that "[t]he Court will retain jurisdiction over the Parties to enforce this Stipulation of Settlement." (Compl., Ex. A, at §§ 18, 20.) In the 1994 Final Order, Judge Nickerson incorporated the terms of the Consent Judgment and retained "continuing jurisdiction" "over implementation of this Settlement" and "over all parties to the Action for the purpose of enforcing and administering the Settlement." (Prokop Decl., Ex. C., at ¶¶ 1, 7.)

The Plaintiff contends that since Judge Nickerson retained jurisdiction to enforce the Consent Judgment, this Court has ancillary jurisdiction over the Plaintiff's claim. (The Pl.'s Opp'n Mem. at 11.) However, both Kokkonen and the other New York cases cited by the Plaintiff did not involve separate actions; rather the plaintiffs in those cases asserted claims to enforce settlement agreements before the judges who approved those settlements. Kokkonen 511 U.S. at 376, 114 S. Ct. at 1674 (plaintiff moved to enforce a settlement agreement before the district court that "so ordered" a stipulation of settlement); Hendrickson v. United States, No. 82-CV-621T (MAT), 2014 WL 1224715, at *3 (W.D.N.Y. Mar. 25, 2014) ("I find, however, that because Courts retain ancillary jurisdiction to enforce *their own Orders*, this court has retained jurisdiction over the enforcement of the Order issued April 29, 1985 approving the settlement of this action.) (emphasis added).

Indeed, the Supreme Court in Peacock v. Thomas, 516 U.S. 349, 357, 116 S. Ct. 862, 868, 133 L. Ed. 2d 817 (1996), noted that "[i]n determining the reach of the federal courts' ancillary jurisdiction, we have cautioned against the exercise of jurisdiction over proceedings that are entirely new and original" or "where the relief sought is of a different kind or on a different principle" than that of the prior decree." Id. (internal quotation marks, citations, and

alterations omitted). There, the Supreme Court rejected ancillary jurisdiction over a separate suit brought by a plaintiff to enforce a settlement agreement with a corporation over allegations that it breached a fiduciary duty to the plaintiff. Id. at 352. The Court found that the suit to enforce the settlement agreement was not ancillary to the original suit because the plaintiff alleged claims based on theories of liability that were not alleged by the Plaintiff in the original suit. Id. at 358 ("This is a new action based on theories of relief that did not exist, and could not have existed, at the time the court entered judgment in the ERISA case.").

The Court finds the reasoning of Peacock to be applicable to the instant case. Here, the Plaintiff commenced a separate action to enforce a settlement agreement approved by a different judge under a different docket number. Thus, unlike in Kokkonen or in Hendrickson, there is no justification to exercise enforcement jurisdiction in the present case because this Court did not approve the Consent Judgment; rather, Judge Nickerson approved the Consent Judgment in the Rapf Action. Therefore, the purpose behind enforcement jurisdiction — namely, "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees" — does not support exercising jurisdiction here. See Winter, 2014 WL 4092238, at *3 ("In all of the cases cited by [the] [d]efendant, including Peacock, the district court was enforcing a judgment it itself had entered. It is clear that the reasoning behind ancillary enforcement jurisdiction is to 'enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees,' not the decrees of other federal courts.") (quoting Epperson, 242 F.3d at 104–05).

In addition, like the plaintiff in Peacock, the complaint alleges claims and theories of liability not alleged in the Rapf Action. (Compl. at ¶ 69.) Indeed, the Plaintiff concedes these distinctions — the Plaintiff's memorandum of law states: "[t]he facts and occurrences material to

this action, having to do with the negotiations leading up to the issuance of the General Permit in 1999 . . . all occurred after the discontinuance of the Rapf Action, and present issues distinct from those litigated in the Rapf Action[.]" (The Pl.'s Mem. of Law at 21.) Under such circumstances, the present action cannot be considered "ancillary" to the Rapf Action. See Peacock, 516 U.S. at 358-59, 116 S. Ct. at 869 (rejecting ancillary jurisdiction because "[t]he alleged wrongdoing in this case occurred after the ERISA judgment was entered, and Thomas' claims —civil conspiracy, fraudulent conveyance, and 'veil-piercing' — all involved new theories of liability not asserted in the ERISA suit.").

Therefore, the Court finds that the Plaintiff has failed to shows that this Court has ancillary jurisdiction over its claims to enforce the Consent Judgment. See Peacock, 516 U.S. 359, 116 S. Ct. at 869 ("When a party has obtained a valid federal judgment, only extraordinary circumstances, if any, can justify ancillary jurisdiction over a subsequent suit[.]").

The Court notes that in previous instances, the Plaintiff has filed motions to enforce the Consent Judgment in the Rapf Action. On March 1, 2002, the Plaintiff made a motion for contempt in the Rapf Action against the NYDEC for failure to comply with the Consent Judgment. (84-cv-1478, Dkt. No. 205.) Judge Gleeson, who was reassigned to the case after Judge Nickerson left the bench, denied that motion. (Id.) Judge Gleeson remains assigned to the Rapf Action. Therefore, to the extent that the Plaintiff seeks to make a claim to enforce the Consent Judgment, it should seek to do so, as it has in previous instances, in the Rapf Action.

**2. Federal Question Jurisdiction.**

The Plaintiff next contends that even if there is no ancillary jurisdiction over its claim to enforce the Consent Judgment, the Court has federal question jurisdiction over its claim because

the Consent Judgment "arises from a federal court order thus necessarily implicates questions of federal law."  (The Pl.'s Opp'n Mem. of Law at 12.)  The Court disagrees.

Pursuant to 28 U.S.C. § 1331, the district courts have original subject matter jurisdiction "over all civil actions arising under the [United States] Constitution and the laws and treaties of the United States."  An action "arises under" federal law in two ways.  First, under the "well-pleaded complaint rule," which "provides that federal jurisdiction exists only when a federal question is present on the face of the plaintiff's properly pleaded complaint," <u>Town of Southold v. Go Green Sanitation, Inc.</u>, 949 F. Supp. 2d 365, 370 (E.D.N.Y. 2013) (Spatt, J) (quoting <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)).  Second, federal jurisdiction may arise even if the claim is a state law cause of action, provided that the state law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005).

In <u>Kokkonen</u>, the Supreme Court held that a claim seeking to enforce a settlement agreement approved by a court is not a federal cause of action, and hence, must "necessarily raise a stated federal issue" or another basis to confer federal jurisdiction.  511 U.S. at 378, 114 S. Ct. at 1675-76 ("Enforcement of the settlement agreement, however, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.").

The Plaintiff contends that its enforcement claim arises under federal law for purposes of § 1331 because the Court will apply federal common law in interpreting the contract.  (The Pl.'s Opp'n Mem. of Lat at 14–17.)  Again, the Court disagrees.

21

Here, the Plaintiff argues that the Defendant breached Section 12(b)(i) of the Consent Judgment, which requires that the NYDEC issue a general permit to the Plaintiff "with appropriate conditions standard to such permits." (Compl., Ex. A.) The Court will not look to a federal statute or rules in interpreting this provision. Rather, the Court will construe a settlement agreement as a contract and apply general principles of contract to interpret it. See Geller v. Branic Int'l Realty Corp., 212 F.3d 734, 737 (2d Cir. 2000) ("We have often compared stipulated settlements to contracts, and we have consistently applied the law of contract to disputes concerning the construction and enforcement of settlements."); see also Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999) ("Settlement agreements are contracts and must therefore be construed according to general principles of contract law.").

Thus, the Court does not find that the Plaintiff's claim necessarily raises a federal question. See Kokkonen, 511 U.S. at 381, 114 S. Ct. at 1677 ("The suit involves a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit. No federal statute makes that connection (if it constitutionally could) the basis for federal-court jurisdiction over the contract dispute.").

In support of its argument, the Plaintiff also relies on a choice of law provision in the Consent Judgment, which provides the Consent Judgment will "be governed by and interpreted in accordance with the laws of the State of New York and the United States." (Compl., Ex. A, at § 24.) The Plaintiff offers no reason to support its assertion that this provision mandates the application of federal law, as opposed to New York law, to the Plaintiff's present claim. Although the United States was a party to the Consent Judgment, it is not a party to this case. Rather, in this case the Plaintiff asserts a claim against exclusively New York State Defendants arising out of a decision by the NYDEC, a New York State Agency, to deny the Plaintiff

application for a renewal of a general permit that is governed by New York State law.  Under

these circumstances, it appears that the Court would apply New York law to the Plaintiff's

claims.

Finally, the cases cited by the Plaintiff are not to the contrary.  The Plaintiff places

particular reliance on Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 434, 124 S. Ct. 899, 901, 157

L. Ed. 2d 855 (2004).  In that case, class action plaintiffs sought to enforce the provisions of a

consent decree entered into with Texas State agencies to settle claims against those agencies that

a Texas Medicaid program did not comply with the requirements of federal law.  Id. at 902.  The

Supreme Court found that the decree did "arise under" federal law because the "order to be

enforced is a federal decree entered to implement a federal statute . . . . The decree reflects a

choice among various ways that a State could implement the Medicaid Act.  As a result,

enforcing the decree vindicates an agreement that the state officials reached to comply with

federal law."  Id. at 439.

Similarly, the other cases relied on by the Plaintiff involved settlement agreements with

federal parties or underlying claims brought pursuant to federal statutes.  See, e.g., Boyle v.

United Technologies Corp., 487 U.S. 500, 504, 108 S. Ct. 2510, 2514, 101 L. Ed. 2d 442 (1988)

("We have held that obligations to and rights of the United States under its contracts are

governed exclusively by federal law.");  In re Artha Mgmt., Inc., 91 F.3d 326, 329 (2d Cir. 1996)

("[F]ederal precedent governs [the] scope of agent's authority when underlying claim is federal

in nature.") (parenthetically quoting United States v. Int'l Bhd. of Teamsters, Chauffeurs,

Warehousemen & Helpers of Am., AFL-CIO, 986 F.2d 15, 20 (2d Cir. 1993)).

That is not the case here.  As stated above, the Plaintiff's underlying claim is that the

NYDEC Defendants breached Section 12(b)(i) the Consent Judgment requiring the NYDEC to

issue the Plaintiff a general permit "with appropriate conditions standard to such permits." (Compl., Ex. A.)  The claim does not involve the implementation or interpretation of a federal statute, as was the case in <u>Frew</u>, or a federal party, as was the case in <u>Boyle</u>.  Therefore, the Court finds that the Plaintiff's claim for enforcement of the Consent Judgment does not present a federal questions for purposes of § 1331.  <u>See</u> <u>Kokkonen</u>, 511 U.S. at 381, 114 S. Ct. at  1677 ("The short of the matter is this: The suit involves a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit.  No federal statute makes that connection (if it constitutionally could) the basis for federal-court jurisdiction over the contract dispute.").

The Plaintiff has failed to assert any independent basis for federal jurisdiction over its claim to enforce the Consent Judgment.  Accordingly, the Court dismisses that claim without prejudice and with leave to renew in the Rapf Action.

### C. As to Defendants' Remaining Causes of Action

The Plaintiff also asserts the following claims against the NYDEC: (i) a breach of contract claim arising from the Consent Judgment; and (ii) a claim pursuant to Article 78 of the NYCPLR for a judgment that the decision by NYDEC not to renew the 1999 General Permit was arbitrary, capricious, and unlawful.  (<u>Id.</u> at ¶ 67, 74.)  In addition, the Plaintiff names the New York State Defendants in the complaint as indispensable parties but does not assert claims against them.

The Plaintiff's claim that the NYDEC Defendants breached Section 12(b)(i) of the Consent Judgment by failing to renew the 1999 General Permit is duplicative of the Plaintiff's claim to enforce the Consent Judgment.  The breach claim relies on the same provision of the Consent Judgment and seeks the same remedy as the Plaintiff's claim to enforce the Consent

Judgment.  Indeed, the Plaintiff concedes in its brief that its breach of contract claim is "plead in the alternative to the First Claim for contempt and enforcement of the [Consent Judgment."  (The Pl.'s Opp'n Mem. of Law at 15.)  Therefore, for the reasons discussed above, the Court also dismisses the Plaintiff's second cause of action for breach of the Consent Judgment.

The Plaintiff's second claim pursuant to Article 78 of the NYCPLR is made under New York State law.  Nevertheless, the Plaintiff argues that the claim necessarily raises a federal question because it would "necessitate" the interpretation of the Consent Judgment, which the Plaintiff alleges is governed by federal law.  (Id. at 15.)  Again, the Court disagrees.

The Plaintiff's Article 78 cause of action is premised on the allegations that (i) the NYDEC erred by not renewing the 1999 General Permit; and (ii) ALJ Goldberger erred by not giving property owners on the Barrier Island proper notice of the January 5, 2011 hearing.  (Compl. at 66–74.)

The first allegation arises from Section 12(b)(i) of the Consent Judgment, which as described above does not necessitate the interpretation of a federal statute.  The second allegation — that ALJ Goldberger did not give proper notice to property owners — would necessitate the interpretation of the applicable state law and procedures relating to a hearing before an ALJ to challenge a decision made by the NYDEC to deny a request for a general building permit.  See Kelly v. City of Mount Vernon, 344 F. Supp. 2d 395, 406 (S.D.N.Y. 2004) ("'An Article 78 proceeding is a novel and special creation of state law, and differs markedly from the typical civil action brought in this Court in a number of ways.' . . . . This court has no original jurisdiction over an Article 78 claim."); see also Birmingham v. Ogden, 70 F. Supp. 2d 353, 372 (S.D.N.Y. 1999) ("Article 78 actions were 'designed for the state courts, and are best suited to

adjudication there.'") (internal quotation marks and citations omitted). Thus, the Court does not find that the Plaintiff's Article 78 claim arises under federal law.

In the alternative, the Plaintiff asserts that the Court should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over its Article 78 claim. Under 28 U.S.C. § 1367, a court has discretion to exercise to exercise supplemental jurisdiction over claims that "form part of the same case or controversy" if they "derive from a common nucleus of operative fact." Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011) (quoting Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004)).

However, courts in this Circuit have uniformly declined to exercise supplemental jurisdiction where, as here, there are no federal claims left in the case. See, e.g., Rivera v. New York City Pub. Sch. Dep't of Educ., No. 09 CIV. 8379 (RMB), 2011 WL 1344417, at *5 (S.D.N.Y. Mar. 31, 2011) ("Because the Court dismisses Plaintiff's federal claims, it declines to exercise jurisdiction over Plaintiff's remaining State Law Claims."); Kelly v. City of Mount Vernon, 344 F. Supp. 2d 395, 406 (S.D.N.Y. 2004) ("Cases uniformly hold that federal courts should not hear Article 78 claims when all federal claims have been dismissed."); Cartagena v. City of New York, 257 F. Supp. 2d 708, 709 (S.D.N.Y. 2003) ("The cases that have addressed the issue have consistently declined to exercise supplemental jurisdiction over Article 78 claims."). Accordingly, the Court declines to exercise supplemental jurisdiction over the Plaintiff's third cause of action under Article 78 of the NYCPLR and dismisses that claim without prejudice.

Finally, as the Court grants the Defendants' motion to dismiss all of the Plaintiff's claims, there are no longer any claims pursuant to which the New York State Defendants could be

indispensable parties. Thus, the Court dismisses without prejudice the Plaintiff's complaint with respect to the New York State Defendants.

## D. The Plaintiff's Request to Amend its Complaint

In its memorandum of law in opposition to the Defendants' motion to dismiss, the Plaintiff requests in the alternative, that the Court convert the Plaintiff's complaint to a motion for contempt in the Rapf Action. (The Pl.'s Opp'n Mem. of Law at 24.) Fed. R. Civ. P. 15 provides that a party may "amend its pleading once as a matter of course within . . . 21 days after serving it." Where the 21 day period has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Id.

The Plaintiff did not previously seek leave of the Court to amend its complaint. Moreover, "numerous courts have held that a 'bare request to amend a pleading' contained in a brief, which does not also attach the proposed amended pleading, is improper under Fed. R. Civ. P. 15." Garnett-Bishop v. New York Cmty. Bancorp, Inc., No. 12-CV-2285 (ADS), 2014 WL 5822628, at *5 (E.D.N.Y. Nov. 6, 2014) (Spatt, J); see also Shah v. Helen Hayes Hosp., 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint."); Curry v. Campbell, No. 06-CV-2841 (DRH), 2012 WL 1004894, at *7 (E.D.N.Y. Mar. 23, 2012) ("To satisfy the requirement of particular[ity] in a motion to amend a pleading, the proposed amended pleading must accompany the motion so that both the [c]ourt and opposing parties can understand the exact changes sought.") (quoting AT & T Corp. v. Am. Cash Card Corp., 184 F.R.D. 515, 521 (S.D.N.Y. 1999)).

Accordingly, the Plaintiff's request to amend the complaint is denied. To the extent that the Plaintiff wishes to make a claim to enforce the Consent Judgment, that claim may be properly addressed in the Rapf Action.

### III. CONCLUSION

For the foregoing reasons, it is hereby ordered that the Defendants' motion to dismiss is granted and the Plaintiff's complaint is dismissed in its entirety without prejudice and with leave to renew in the Rapf Action. The Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
March 2, 2015


_/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge